IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUERTA et al., | No. C 11-04817 CRB |
| Plaintiffs, | **ORDER DENYING MOTION FOR STAY PUT RELIEF** |
| v. | |
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT, | |
| Defendant. | |

This is an Individuals with Disabilities Education Act ("IDEA")[1] case brought by Plaintiffs Caroline Barwick, Russell Huerta, and their 3-year old autistic son, Sebastian. See generally Mot. (dkt. 9). Plaintiffs are asking the Court for "stay put relief." They wish to continue Sebastian's existing educational program – a program which has been highly beneficial to him – during the pendency of their dispute with Defendant, the San Francisco Unified School District ("District"), about the appropriate permanent placement. Id. Although the Court has great sympathy for Plaintiffs, it must follow the law as set forth by the Ninth Circuit. As set forth below, the Court's understanding of a recent Ninth Circuit decision compels it to deny stay put relief here.

//

//

---

[1] See generally 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.518, and California Education Code §§ 48915.5 and 56505(d).

## I. BACKGROUND

Sebastian Huerta is a three-year-old boy who has been diagnosed with adaptive behavior deficits and delays in his development, mostly in communication and socialization. Mot. at 2. His parents placed him in the private Serra Preschool for School Year 2010-2011 beginning in the fall of 2010 before they knew that he had any learning disabilities. RFJN Ex. A at 3. He was subsequently diagnosed with learning disabilities, and the Golden Gate Regional Center ("GGRC") found him eligible for services. Id. Initially he received twenty hours of applied behavior analysis ("ABA") services a week, but GGRC later increased his ABA services to thirty hours a week. Id. at 4.

Sebastian's services were to terminate when he turned three on October 16, 2010,[2] and so, on September 1, 2010, Plaintiffs, the GGRC, and the District held a transitional meeting to transfer services from GGRC to the District without interruption. Id. The parties discussed Sebastian's progress in his existing program, possible District programs, and the District's need to perform its own assessment. Id. Plaintiffs cooperated with the District in facilitating the assessment. Id. As of Sebastian's third birthday, as scheduled, GGRC terminated funding for all services, and Plaintiffs assumed responsibility for paying for the thirty hours per week of ABA services, and the tuition at Serra. Id.

An individualized education program ("IEP") meeting was held on October 26, 2010. Id. at 2. The evidence indicates that the District did a poor job of communicating with Plaintiffs in advance of, during, and after the IEP meeting. See generally id. On October 26, 2010, the District found Sebastian eligible for special education but did not offer him placement or services. See Barwick Decl. (dkt. 8-2) ¶ 3. Plaintiffs left the IEP meeting with "an incomplete draft of the IEP that failed to disclose the location of [Sebastian's] placement." RFJN Ex. A at 10. Plaintiffs continued Sebastian's existing program by paying for it unilaterally. Barwick Decl. ¶ 3. Although the District had apparently intended to have

---

[2] See J.H. v. L.A. Unified Sch. Dist., No. 10-00780, 2010 U.S. Dist. LEXIS 39705, at *2-3 (C.D. Cal. March 29, 2010) (explaining that under Part C of the IDEA, states must provide services to disabled children under the age of three, and under Part B of the IDEA, states must provide services to disabled children between the ages of three and twenty-one).

2

1 a subsequent IEP meeting in late November 2010, during which a placement would
2 presumably be communicated to Plaintiffs, it improperly "abandoned the IEP process
3 because it believed that [Plaintiffs] were no longer interested in pursuing an IEP because they
4 had filed for a due process hearing." RFJN Ex. A at 10.

5   Indeed, on November 9, 2010, Plaintiffs filed for due process with the Office of
6 Administrative Hearings ("OAH") because "Sebastian did not have any placement or
7 services from the District." Barwick Decl. ¶ 4, Mot. at 3.

8   On May 9, 2011, following three days of hearings, the ALJ issued an opinion in
9 Plaintiffs' favor. See generally RFJN Ex. A. The ALJ found that the District denied
10 Sebastian a Free and Appropriate Public Education ("FAPE") based on various procedural
11 violations of the IDEA. Id. at 18-22; see also Order Denying MTD at 2 ("the finding of
12 denial of FAPE in the Decision [was] based on procedural irregularities during the IEP
13 development process"). In discussing the assessment of a doctor hired by Plaintiffs, he
14 asserted that "The program currently administered by Serra [] includes a one-to-one aid from
15 Steps providing ABA therapy services both in the classroom and at home. Classroom
16 services are provided 10 hours each week and in-home services are provided 20 hours each
17 week. This is an appropriate placement for [Sebastian] at this time and meets his unique
18 educational needs." Id. at 6. He noted that "Parents may receive reimbursement for their
19 unilateral placement if the placement met the child's needs and provided the child with
20 educational benefit," adding that the parents' placement "is not required to meet all the
21 requirements of the IDEA" to be eligible for reimbursement. Id. at 24. He concluded that
22 Sebastian's "current private placement at Serra and associated ABA services are a proper
23 placement for him" and that Plaintiffs were "entitled to reimbursement for the costs of his
24 private educational placement and services from October 16, 2010 [the date of Sebastian's
25 third birthday] until District conducts and [sic] IEP team meeting and offers a FAPE to
26 [Sebastian]." Id. at 25. He ordered, among other things, that the District "hold an IEP team
27 meeting and offer [Sebastian] a FAPE. District shall include in the IEP a transition plan
28

designed to assure that [Sebastian] will succeed in his transfer from Serra to a District program. District will also include extended school year services in the IEP." Id.

The District began reimbursing Plaintiffs for Sebastian's existing program, and on June 8, 2011 held a second IEP meeting. Mot. at 4. The IEP meeting resulted in a June 13, 2011 written offer of placement and services for Sebastian, specifically allowing Sebastian to stay in his current program for Extended School Year ("ESY") 2011-2012, and then transitioning to public placement for the 2011-2012 school year at a District preschool called Presidio Special Day. Id. at 4.[3] Plaintiffs consented to the June 13, 2011 IEP for the continuation of Sebastian's current program for ESY 2011, but did not consent to the offer of placement and services for the 2011-2012 school year, believing that it did not provide a FAPE. Id. at 4-5. The ESY ended on July 9, 2011, and Plaintiffs have been unilaterally funding the current program for Sebastian since then. Id. at 5. The program costs $1,500-$2,000 a week; Plaintiffs represent that they "are running out of money" and will be unable to afford it as of November 30, 2011. Id.; Barwick Decl. ¶ 6.

On August 23, 2011, Plaintiffs filed a due process request with OAH, alleging that the District violated the IDEA for failing to offer FAPE for the 2011-2012 school year in the June 13, 2011 IEP. See Mot. at 5, RFJN Ex. 1. The petition also included a Motion for Stay Put, seeking an order that the District maintain Sebastian's current educational placement based on the finding by the ALJ that the educational program was appropriate, and the implementation of the same program for the ESY 2011. Id.

On September 14, 2011, the same ALJ issued an Order Denying Motion for Stay Put, finding that "the District's offer of continuing [Sebastian's] private placement was limited to the ESY period only," and that Plaintiffs had "failed to provide any authority to support [their] contention that placement and services agreed upon and implemented during ESY can

---

[3] The proposed placement at Presidio Special Day involved 5 days a week of class, with 20 hours of ABA therapy a week at school, and 10 hours a week at home. Id. Plaintiffs discuss the ways in which this is different and less desirable than the existing program, id., but that issue is beyond the Court's current role.

4

1 constitute stay put for the regular school year." RFJN Ex. 3 at 3.[4] Plaintiffs moved for
2 reconsideration the next day, arguing that the September 14 Order did not address the
3 applicability of 34 C.F.R. § 300.518(d), which requires that OAH decisions be treated as
4 agreements between student and the state for the purposes of stay put, and did not identify
5 any stay put placement for Sebastian. See Mot. at 6; RFJN Ex. 4. The Motion urged, "in this
6 case there is no other IEP or implemented placement for purposes of stay put. . . . absent a
7 ruling of stay put placement, Sebastian will be denied any educational placement pending
8 resolution of this case." RFJN Ex. 4 at 5-6. The day after that, the same ALJ denied the
9 Motion for Reconsideration, finding that 34 C.F.R. § 300.5(d) only provides that OAH
10 decisions agreeing "with the child's parents that a change of placement is appropriate"
11 should be treated as agreements, but that here, "no change of placement could be ordered
12 since no placement existed." RFJN Ex. 6 at 1-2. He added that his May 9, 2011 decision
13 "did not order prospective placement of [Sebastian] at Serra . . . thus, [it] cannot be used as
14 the basis for stay put." Id. at 2.

Plaintiffs filed this lawsuit on September 28, 2011, seeking an interlocutory appeal of
the denial of stay put. See Compl. (dkt. 1) ¶ 6. On October 12, 2011 they filed a Motion for
Preliminary Injunction pursuant to 20 U.S.C. § 1415(j) of the IDEA, asking the Court to
order the District "to continue funding the costs of the educational program of Sebastian
Huerta pending the completion of the underlying administrative proceeding below, and
through review if any by the district court and court of appeals." See Mot. at 1.

**II.   LEGAL STANDARD**

While parties dispute the appropriate placement of a student, "unless the State or local
educational agency and the parents otherwise agree, the child shall remain in the then-current

---

[4] Plaintiffs assert that the Order misconstrued their argument for stay put and that it was based on the ALJ's finding that the placement was appropriate, not on the ESY placement. See Mot. at 12 (adding, "The fact that following the OAH Decision the District implemented this very placement through Sebastian's IEP for 2011 ESY merely supports the conclusion that this placement is Sebastian's current educational agreement."). Plaintiffs no longer rely on the ESY placement as a basis for stay put – if they ever did – and so the District's argument on that point, see Opp'n (dkt .18) at 7-9, is irrelevant.

5

1 educational placement of the child, or, if applying for initial admission to a public school,[5]
2 shall, with the consent of the parents, be placed in the public school program until all such
3 proceedings have been completed." 20 U.S.C. § 1415(j); see also 34 C.F.R. § 300.518(b).
4 California has adopted the federal stay put provision. Cal. Educ. Code § 56505(d).

The IDEA does not define the phrase "current educational placement," but it is generally interpreted as the placement set forth in the child's last implemented IEP. Johnson ex rel. Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1180 (9th Cir. 2002). Alternatively, the state and the parents may "otherwise agree" to another placement, which then becomes subject to the stay put provision. Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearing, 903 F.2d 635, 641 (9th Cir. 1990). The parties implicitly agree to a placement when the parents receive a state administrative agency decision in favor of their choice of placement. Id. (citing Sch. Comm. of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 372-73 (1985)); 34 C.F.R. § 300.518(d).

A motion to stay put functions as an "automatic" preliminary injunction, so the moving party need not show the traditionally required factors (e.g., irreparable harm) to obtain preliminary relief. Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1037 (9th Cir. 2009) (citing Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996)).[6]

### III.   DISCUSSION

Plaintiffs' Motion presents the Court with just one legal question to resolve: does Sebastian's existing placement qualify for stay put relief? In light of L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900 (9th Cir. 2009), cert. denied, 130 S. Ct. 90 (2009), the Court concludes that the answer is no.

---

[5] Plaintiffs argue that "the law regarding initial admission to public school are [sic] inapplicable here as Sebastian was found eligible for special education, was offered an IEP without placement and services, obtained an adjudication through due process, and received special education funded by the District pursuant to a reimbursement award and through his IEP for ESY 2011." Reply (dkt. 20) at 7. They cite no authority for this.

[6] In light of this authority, the Court disregards Plaintiffs' argument about the traditional preliminary injunction factors and does not hold Plaintiffs to that high standard. See Mot. at 14-15.

6

### A.     The May 9, 2011 Order

Sebastian had no "last implemented IEP," see Johnson, 287 F.3d at 1180, and Plaintiffs and the District never agreed to a placement, see Clovis, 903 F.2d at 641. Thus Plaintiffs argue that "the [May 9, 2011] OAH Decision[,] with its findings that the District denied Sebastian a FAPE following his third birthday, that parents' unilateral educational program was required and appropriate and that parents were entitled to reimbursement for this program" constitutes an implicit agreement that Serra and the ABA services by Steps are Sebastian's current educational placement for the purposes of 20 U.S.C. § 1415(j). Mot. at 8 (citing Clovis, 903 F.2d at 641 for the holding that "once the State educational agency decided that the parents' placement was the appropriate placement, it became the 'then current educational placement'").

There is no question that administrative decisions finding that the parents' choice of placement is appropriate do render those placements the "current educational placement." See, e.g., Clovis, 903 F.2d at 641, Mackey ex rel. Thomas M. v. Bd. of Educ. for the Arlington Cent. Sch. Dist., 386 F.3d 158, 163 (2d Cir. 2004) (internal quotation marks omitted) ("once the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law"). But, as Plaintiffs acknowledge, in such cases, the courts "found that parents' unilateral private placement was the 'current educational placement' because the court implied a 'current educational placement' based on the finding of the court or agency below that such private placement was appropriate." See Mot. at 9.

Here, despite Plaintiffs' firm belief to the contrary, there has been no finding that their private placement is appropriate; rather, the ALJ only found that Plaintiffs' payments for the private placement should be reimbursed. See RFJN Ex. A at 25. Plaintiffs rely on two statements the ALJ made in his May 9, 2011 Order. See Mot. at 9-10. First, they rely on the ALJ having stated, in discussing the assessment of a doctor hired by Plaintiffs, that "[t]he program currently administered by Serra [] includes a one-to-one aid from Steps providing ABA therapy services both in the classroom and at home. . . . This is an appropriate placement for [Sebastian] at this time and meets his unique educational needs." Id. at 9

7

(citing RFJN Ex. A at 6). Second, they rely on the ALJ's statement that Sebastian's "current private placement at Serra and associated ABA services are a proper placement for him. In conjunction, the services provided by Steps [and] Serra provides [Sebastian] with instruction under a well designed teaching plan tailored to develop functional skills in multiple settings with appropriate interventions." Id. at 9-10 (citing RFJN Ex. A at 25).

The second statement Plaintiffs rely on was quite clearly made in service of the Order's reimbursement award, as the sentence immediately following it concludes, "[Sebastian] is entitled to reimbursement . . . ." Id. The first statement is less clearly limited to reimbursement, but must be read in context. The entirety of the ALJ's Order was written in support of his conclusion that the District should (1) hold an IEP and offer Sebastian a FAPE, and (2) reimburse Plaintiffs "for the costs of his private educational placement and services." RFJN Ex. A at 25. The statement itself includes the phrase "at this time" and, like the rest of the Order, makes no finding as to the appropriate prospective placement for Sebastian. See id. at 6. Also, the ALJ ordered that the IEP include a "transition plan designed to assure that [Sebastian] will succeed in his transfer to a District program," id. at 25, thus explicitly anticipating that Sebastian would not be staying at Serra.

To the extent that there is any remaining question as to whether the ALJ intended to render Sebastian's existing placement the "current educational placement" for purposes of stay put, subsequent holdings by the same ALJ answer that question. Pointedly, in his Order denying Plaintiffs' Motion for Reconsideration, the ALJ stated that his May 9, 2011 decision "did not order prospective placement of [Sebastian] at Serra . . . thus, [it] cannot be used as the basis for stay put. The May 9, 2011 decision only ordered reimbursement of costs incurred by [Plaintiffs] through the date of this Decision." RFJN Ex. 6 at 2 (emphasis added). This is fatal to Plaintiffs' case in light of the Court's understanding of Capistrano.

**B.   Capistrano**

The student in Capistrano, 556 F.3d at 911, did not fit into either of the common "current educational placement" categories of 20 U.S.C. § 1415(j), because he never had an implemented IEP and his parents and the District never agreed on a placement. The student

was making his initial application to public school, but his parents did not consent to his placement in public school and instead "unilaterally placed [him] in a very expensive private program." Id. The court explained that the parents' "only viable argument for entitlement to 'stay put' is to construe the district court's . . . reimbursement order as creating a 'current educational placement' implied by law." Id.[7] But the court explained that in cases such as Mackey and Clovis, "where a court implied a 'current educational placement,' the court or agency had expressly deemed the private placement appropriate." Id. at 912. The court found that such a finding had not been made because the district court never "adjudicat[ed] the appropriateness of [the student's] private placement." Id. It stated that the district court, in denying a stay put injunction, had "reiterated that it had not ruled on the merits of L.M.'s placement." Id.

The court in Capistrano noted that the student "points to language in the district court's opinion indicating 'the private in-home services . . . were appropriate, under the circumstances' to support his argument that the court did rule on the merits of his placement," but concluded that that language was taken out of context and that the district court was only addressing "the right to reimbursement under section § 1412(a)(10)©, which permits reimbursement if the child has received 'some educational benefit.'" Id. n.9. The court concluded, "[u]nless the district court or agency actually reaches the merits of the appropriate placement, we will not imply a 'current educational placement for purposes of § 1415(j)." Id. at 913; see also D.L. v. Shoreline Unified Sch. Dist., No. 09-04753, 2010 WL 3893629, at *6 (N.D. Cal. Sept. 30, 2010) (relying on Capistrano and presenting a more straightforward case where "there has been no determination that [the private school placement], which was unilaterally chosen by Plaintiff's parents, is an appropriate placement," and "[t]herefore, [the private school placement] does not qualify as a 'current educational placement' under section 1415(j).").

---

[7] Plaintiffs here cite that "viable argument" language, see Mot. at 13 n.4, as does the court in J.H., 2010 U.S. Dist. LEXIS 39705, at *19, but both fail to mention that the Ninth Circuit went on to reject that "viable argument." See Capistrano, 556 F.3d at 912-13.

9

1    Capistrano is analogous. Here, as in Capistrano, the student had no previously
2 implemented IEP, and his parents unilaterally placed him in a private educational program.
3 Here, as in Capistrano, the order upon which the plaintiff prevailed awarded reimbursement
4 but did not award prospective relief. Here, as in Capistrano, the judge who wrote the order
5 subsequently explained that the order was not intended to speak to the merits of the student's
6 placement. Here, as in Capistrano, language in the order finding services appropriate was
7 included merely to address the right to reimbursement.

8    Plaintiffs seek to side-step Capistrano based on one distinction: there, unlike here, the
9 ALJ had found the district program to be appropriate. See Reply (citing Capistrano, 556
10 F.3d at 908).[8] But the Ninth Circuit's sweeping holding in Capistrano was that a
11 reimbursement award is insufficient to imply a current educational placement. Capistrano,
12 556 F.3d at 913. The court did not even mention the ALJ's determination in its analysis of
13 the student's current educational placement. See id. at 911-13.[9] This Court therefore does
14 not believe that the lack of such a determination here permits it to disregard Capistrano's
15 holding. To the extent that the Ninth Circuit does, in fact, find such a determination to be
16 meaningful, it will surely say so on appeal.

17    Plaintiffs also argue that "if the administrative decision upholds a parent placement as
18 appropriate (whether through an award of reimbursement based on lack of district provided
19 FAPE or through an award of prospective placement for compensatory education for lack of
20 district provided FAPE), that decision becomes an implied agreement . . . for purposes of
21 stay put." Reply (dkt. 10) at 8. That is simply incorrect as to an award of reimbursement in
22 light of Capistrano, 556 F.3d at 913.[10] Ravenswood City Sch. Dist. v. J.S., No. 10-3950,

---

[8] Here, the ALJ "did not render a finding upon the substantive offer of placement and services by District." Order Denying Motion to Dismiss at 2.

[9] Moreover, the stay put challenge in Capistrano was based on the district court's order, not the ALJ's. See id. at 911.

[10] Plaintiffs' best support for this argument, see Mot. at 13 n.4, is Winkelman v. Parma City Sch. Dist., No. 1:08 CV 2398, 2008 U.S. Dist. LEXIS 112962, at *9 (N.D. Ohio Oct. 24, 2008), in which the Northern District of Ohio held that where an ALJ "agreed that Plaintiffs were entitled to remove [student] from [the district] to [private placement] because the IEP was inappropriate and [private

10

2010 U.S. Dist. LEXIS 126629 (N.D. Cal. Nov. 18, 2010) (emphasis added), cited by Plaintiffs, see Reply at 8, does not hold otherwise. There, the "ALJ agreed with J.S.'s parents that the program at Stellar Academy afforded 'an effective means of meeting the Student's needs that have resulted from his specific learning disability, and the District's failure to provide him with an appropriate program and services for three years,'" and explicitly "ordered the district to pay tuition, fees and transportation costs for J.S. to attend Stellar Academy for the next three years," and so Judge Armstrong concluded that Stellar Academy was the current educational placement for purposes of stay put. Id., 2010 U.S. Dist. LEXIS 126629, at *2, *4. There were no such findings here. Similarly, Sudbury Pub. Sch. v. Mass. Dep't of Elementary & Secondary Educ., 762 F. Supp. 2d 254, 269 (D. Mass. 2010), which Plaintiffs note distinguishes Capistrano, does so because in that case, "there [had] been a finding on the merits that The Carroll School is an appropriate placement for Student." Here, again, there is no such holding.[11]

In addition to being analogous, Capistrano also has some logical appeal. A finding that a placement is appropriate for the purposes of reimbursement does not necessarily make that placement appropriate for the purposes of stay put relief. Different standards apply: a "parental placement may be found to be appropriate [for the purposes of reimbursement] by a

---

placement] was able to provide [student] with educational benefits," and ordered reimbursement, "it seems clear that [the ALJ] agreed with Plaintiffs that their change of placement from [the district] to [private placement] was appropriate, making [private placement] the child's current educational placement." Winkelman is from outside of the Ninth Circuit, and pre-dates Capistrano, and therefore should be given no weight. Plaintiffs also point to J.H., 2010 U.S. Dist. LEXIS 39705, a post-Capistrano case from within the Ninth Circuit. See Mot. at 13 n.4. But in that case, Judge Pregerson noted that "Parents are not asking to be reimbursed for their placement of J.H. in private school, the placement that is subject to the instant dispute and as to which Parents and the State have never reached an agreement. Rather, Parents argue that the District must provide J.H. with the services they expressly agreed to provide." Id., 2010 U.S. Dist. LEXIS 39705, at *17-18. That makes J.H. factually distinguishable, as here there are no agreed-upon services. Although J.H. goes on to state that "courts have repeatedly found that an order for reimbursement predicated on a finding that a previous IEP was substantively inappropriate 'constitutes a change in the child's current educational placement provision,'" its support for this statement is a Second Circuit case, Capistrano's "viable argument" language, discussed above, and Winkelman. Id. at *18-19. J.H. does not defeat the broad language of Capistrano.

[11] Plaintiffs also rely on Ashland School Dist. v. V.M., 494 F. Supp. 2d 1180 (D. Or. 2007) to refute a point the District does not make: that the offer of a new IEP alters a student's current placement. See Reply at 9. Ashland, 494 F. Supp. 2d at 1182, indeed holds that the offer of a new IEP does not alter a student's current placement.

11

1 hearing officer or a court <u>even if it does not meet the State standards that apply to education
2 provided by [school districts]</u>." 34 C.F.R. § 300.148©  (emphasis added).  Notably, the ALJ
3 here even stated in his May 9, 2011 Order that "Parents are not required to have procured an
4 exact proper placement under the IDEA in order to be entitled to reimbursement." RFJN Ex.
5 A at 24 (citing <u>Alamo Heights Indep. Sch. Dist. v. St. Bd. of Educ.</u>, 79 F.2d 1153, 1161 (5th
6 Cir. 1986)).  This distinction provides further support for denying stay put relief.

Despite the logic behind <u>Capistrano</u>, however, it leads to an unsettling result here.  It leaves Sebastian, who has had no prior District placement, without a "current educational placement."  Without a current educational placement, he is not entitled to stay put.  This subjects him to being bounced between placements, and spending time in potentially inappropriate placements, at each stage of the litigation over his education.  That is contrary to the purpose of the IDEA in general and of the stay put provision in particular.  See <u>Joshua A.</u>, 559 F.3d at 1040 ("the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process").

It weighs heavily on this Court that Sebastian has progressed well in his existing placement, that he faces a "likelihood of regression with any interruption in his program," and that his parents are rapidly running out of money to unilaterally fund his education.  See generally Barwick Decl.  Plaintiffs argue:

> The U.S. Supreme Court has held that, having mandated that participating States provide a FAPE for every student, Congress could not have intended to require parents to either accept an inadequate public-school education pending adjudication of their claims or bear the cost of a private education if the court ultimately determines that the private placement was proper under the Act.

Mot. at 12 (citing <u>Forest Grove Sch. Dist. v. T.A.</u>, 129 S. Ct. 2484 (2009), and <u>Burlington</u>, 471 U.S. at 370; <u>see also</u> Reply at 10.  The Court has no good answer to that argument, and finds it unsettling that Plaintiffs are faced with either accepting a public school placement that no judge has found appropriate or going broke keeping Sebastian in the program that is

working so well for him.[12]  Nonetheless, this Court concludes that its hands are tied by Capistrano.  Perhaps the Ninth Circuit will disagree.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES the Motion for Stay Put Relief, and VACATES any existing stay on the underlying due process case.

**IT IS SO ORDERED.**

Dated: November 14, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[12] The Court recognizes the District's assertion at the motion hearing that there are numerous situations in which stay put does not apply.